# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 15, 2021

Lyle W. Cayce
Clerk

No. 20-50581

Jack Darrell Hearn; Donnie Lee Miller; James Warwick Jones,

*Plaintiffs—Appellants*,

*versus*

Steven McCraw, *in his Official Capacity as Director of the Texas Department of Public Safety*; Sheila Vasquez, *in her Official Capacity as Manager of the Texas Department of Public Safety-Sex Offender Registration Bureau*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-504

Before King, Smith, and Haynes, *Circuit Judges*.

Per Curiam:*

Over two decades since plaintiffs-appellants were first made aware of their lifetime obligation to register with the State of Texas as known sex

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-50581

offenders, they now challenge that obligation as violative of their substantive due process rights under the Fourteenth Amendment of the U.S. Constitution through a 42 U.S.C. § 1983 suit. Following a bench trial, the district court found, *inter alia*, that the challenge was time-barred. For the reasons that follow, we AFFIRM.

**I.**

Plaintiffs-appellants Jack Darrell Hearn, Donnie Lee Miller, and James Warwick Jones (each individually, "Plaintiff" and collectively, "Plaintiffs") pleaded guilty or no contest to charges of sexual assault in the early 1990s. Each Plaintiff accepted a deferred adjudication agreement subject to a period of community supervision or probation. According to Plaintiffs, they entered into these agreements with the understanding that they would either not have to register with the state at all as sex offenders or that such a requirement would cease after their periods of community supervision ended. But in 1997, the Texas legislature amended the law, requiring anyone with a conviction or deferred adjudication for sexual assault to register for life. And each Plaintiff was apprised of this change by late 1997 or early 1998.

Approximately two decades later, Plaintiffs seek relief through a suit under 42 U.S.C. § 1983 against the Director of the Texas Department of Public Safety and the Manager of the Texas Department of Public Safety's Sex Offender Registration Bureau (collectively, "Defendants"). Specifically, Plaintiffs allege that this registration requirement constitutes a breach of their deferred adjudication agreements and a violation of their substantive due process rights under the Fourteenth Amendment of the United States Constitution, entitling them to specific performance of their agreements.

No. 20-50581

After a bench trial, the district court dismissed Plaintiffs' suit as untimely and foreclosed by precedent.[1]  Plaintiffs timely appealed.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011) (quoting *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006)). This court "may affirm a judgment following a bench trial upon any basis supported by the record." *Meche v. Doucet*, 777 F.3d 237, 244 n.5 (5th Cir. 2015).

## III.

Because § 1983 does not provide a statute of limitations, courts borrow from state law. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). And typically, courts look to a state's statute of limitations for personal-injury torts. *Id.* In Texas, this is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(b) (West 2005); *see also Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018). But although state law governs the statute of limitations period, federal law determines when the action accrues. *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001). Accrual begins when a plaintiff is aware that he has been injured or has sufficient information to know as much. *Id.*; *see also Montgomery v. La. ex rel. La. Dep't of Pub. Safety & Corr.*, 46 F. App'x 732, 2002 WL 1973820, at *2 (5th Cir. Aug. 2, 2002).

In this case, no one disputes that the law was amended in 1997 to require annual lifetime registration, and no one disputes that Plaintiffs were

---

[1] Because we agree that the suit is time-barred, we do not address the merits of Plaintiffs' suit.

made aware of this change, at the latest, by 1998. As Plaintiffs have framed their argument, that change in the law constituted a breach of their agreements. Applying the two-year statute of limitations, then, these claims were time-barred by 2000.

But Plaintiffs argue that the continuing violation doctrine, which is typically applied in employment discrimination cases, saves their claims. Plaintiffs are mistaken. To be sure, the continuing violation doctrine is simply a federal doctrine governing accrual of an action in certain circumstances. *Heath v. Bd. of Supervisors for S. Univ. and Agric. and Mech. Coll.*, 850 F.3d 731, 739–40 (5th Cir. 2017). In support of their argument, Plaintiffs point to *Heath v. Board of Supervisors*, but that case does not alter the general understanding of accrual, that is, that a claim accrues when a plaintiff is (or should be) aware of his injury. *Id.* (discussing accrual generally and then discussing the availability of the continuing violation doctrine). Rather, *Heath* explains that in limited circumstances—not present here—a claim will accrue within the limitations period so long as the plaintiff can show that some of the "continuous conduct" occurred within the limitations period. *Id.* at 740. To do so, a plaintiff must show that (1) there are separate-but-related acts at issue; and (2) the violation is continuing. *Id.* at 738. But even if a plaintiff can show as much, this doctrine can be tempered by the court's equitable powers. *Id.*; *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009). In other words, "the continuing violation doctrine extends the limitations period when a violation manifests itself over time, rather than as discrete acts." *Doe v. United States*, 197 F. Supp. 3d 933, 939 (S.D. Tex. 2016), *aff'd*, 853 F.3d 792 (5th Cir. 2017), *as revised* (Apr. 12, 2017).

Against that backdrop, we first look to when Plaintiffs' claims accrued. And plainly, as discussed above and as Plaintiffs frame their injury, the answer to that question is 1997 (or 1998 at the latest) when the law changed (and the alleged breach occurred), and Plaintiffs learned of the

change. *See Doe v. United States*, 853 F.3d 792, 802 (5th Cir. 2017) (observing that the harm occurred when the accusations were made in a case where a plaintiff sought "expungement of a[] [criminal] accusation" years after the records he sought to have expunged had been publicly available and that "[t]he continuing violation doctrine [was] inapplicable"); *Gorelik v. Costin*, 605 F.3d 118, 122–23 (1st Cir. 2010) (finding that republishing an alleged disciplinary action on a website did not constitute "a continuing tort, but rather the continuing effects of an alleged harm" and thus that the continuing violation doctrine did not apply).

Having determined the accrual date, we next look to whether Plaintiffs can show that the suit is nevertheless timely because continuous conduct has occurred within the limitations period (2016 to 2018—as the suit was filed in 2018). Plaintiffs cannot do so. Simply, there is only one act at issue—the alleged breach. *See Gorelik*, 605 F.3d at 122–23 (rejecting the argument that each republication of an alleged disciplinary action on a website constituted a continuing tort and declining to apply the continuing violation doctrine). The fact that Plaintiffs must register annually is not "a continuing tort, but rather the continuing effects of an alleged harm," that is, the alleged breach. *See id.* at 123; *see also Heath*, 850 F.3d at 737 (noting that the continuing violation doctrine applies when the claim "is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant") (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)). In other words, the subsequent yearly registration requirements are not properly understood as separate breaches of their agreements.

Further still, at this point, the evidence of the content of the plea negotiations, which would be crucial to understanding what promises were part of the consideration for the agreements, is limited to affidavits made decades later about what was probably or likely discussed. And courts have tended to avoid adjudicating claims where crucial evidence is missing. *See*

No. 20-50581

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 125 (2002) (O'Connor, J., concurring) (noting that statutes of limitations are "designed" to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared" (quoting *R.R. Tele'rs. v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49 (1944))). So, even if the continuing violation doctrine applied, there is good reason for us temper its application in this case where Plaintiffs have all sworn that they were made aware of the change in the law—and thus the alleged breach—over two decades ago and yet never challenged the alleged breach until this suit.

Therefore, the continuing violation doctrine does not save Plaintiffs' suit. We agree with the district court that the suit is time-barred.

## IV.

For the foregoing reasons, we AFFIRM.